## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

**CRAFT BEER CELLAR GROUP, LLC F/K/A**
**CRAFT BEER STELLAR, LLC**,
a Massachusetts Limited Liability Company,

      Plaintiff,

vs.                               Civil Action No.: 1:20-cv-12214

**BRIAN BEAUCHER**,
**JESSICA BEEBY**,
**NERD CRAFT, LLC**,
a Michigan limited liability company,

      Defendant.

_____/

## COMPLAINT

    Craft Beer Cellar Group, LLC F/K/A Craft Beer Stellar, LLC ("**CBC**") sues Brian Beaucher ("**Beaucher**"), Jessica Beeby ("**Beeby**"), and Nerd Craft, LLC ("**Nerdcraft**") [collectively, "**Defendants**"] and alleges:

### NATURE OF THE ACTION

    1.    This is an action for damages, injunctive and other relief against Defendants for breach of a franchise agreement and for the unauthorized use and infringement of Plaintiff's trademark, trade dress, and related rights pursuant to the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*

### PARTIES

    2.    CBC is the franchisor and operator of a craft and specialty beer bottle shop and tap room franchise business.

    3.    CBC is a limited liability company duly organized under the laws and a citizen of the Commonwealth of Massachusetts, with its principal place of business located in Middlesex

County, Massachusetts.  All of the members of CBC are individuals, each of which is domiciled in and a citizen of the Commonwealth of Massachusetts.

4.      Beaucher and Beeby were the owners/operators of a CRAFT BEER CELLAR® franchise bottle shop and tap room in Grand Rapids, Michigan (the "**Grand Rapids Shop**").

5.      Beaucher and Beeby are individuals who, upon information and belief, reside in, are domiciled within, and are citizens of the State of Michigan.

6.      Nerdcraft was formed by Beaucher to act as, and at all times relevant was, the operating entity for the Grand Rapids Shop.

7.      Nerdcraft is a limited liability company organized under the laws and a citizen of the State of Michigan, with its principal place of business located in Kent County, Michigan. Beaucher, a citizen of the State of Michigan, is the only known member of Nerdcraft.

### JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 based on claims arising out of 15 U.S.C. §§ 1051, *et seq*.  The Court also has subject matter jurisdiction under 28 U.S.C. § 1332 because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.

9.      This Court has personal jurisdiction over Defendants based on the mandatory forum selection clause set forth in Section 9.8(4) of that certain January 23, 2016 Franchise Agreement (the "**FA**") executed by Beaucher and Beeby and applicable to Nerdcraft as an agent of Beaucher and Beeby relative to the operations of the Grand Rapids Shop and their performance under the FA.  A copy of the FA is attached hereto as Exhibit "**A**".

10.     Nerdcraft is also subject to personal jurisdiction because it engaged in substantial contacts directed to Massachusetts.  Such contacts, include, without limitation, executing and

delivering to Massachusetts written agreements to be performed in Massachusetts and submitting to CBC, which is headquartered in Massachusetts, periodic financial, accounting and other reporting/notices incident to operation of the Grand Rapids Shop as part of Defendants' performance under the FA.  Finally, Nerdcraft has declared itself to be and, at all relevant times, has operated as if, like Beaucher and Beeby, Nerdcraft was an owner/control person of the Grand Rapids Shop subject to the terms of the FA, including the mandatory venue/forum selection clause.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and based on the venue/forum selection clauses set forth in the FA.

**GENERAL ALLEGATIONS**

12.     CBC operates a craft and specialty beer bottle shop franchise business with over 20 franchise store locations across the country.

13.     CBC has carefully developed its brand identity and associated trademarks and trade dress over many years and at significant effort and expense for the benefit of all franchisees.

14.     The result of such effort and expense is that the CBC brand has garnered a reputation for the highest quality craft beer products, customer service and industry knowledge.

**CBC's Franchise Standards, Branding & Method of Operation**

15.     Maintaining the CBC reputation among existing and prospective customers requires that each franchise store adhere strictly to the terms of the FA, which sets forth certain of CBC's operational standards and requirements.

16.     Operational procedures and standards are further detailed in the CBC Operations Manual, with which franchisees agree to comply by the explicit provisions of the FA.

17.     CBC sets itself apart from other package or alcohol carry-out and tap room establishments by focusing on craft/specialty beers and like products.

18.     CBC stores do not market or sell mass produced beer products, known as "macro-brewed" beers.

19.     But beyond just falling into this special space in the market, the CBC brand is built on three core focuses: ***Amazing beer, hospitality, and education***.

20.     CBC's proprietary method of operation, detailed in the Operations Manual, is premised on CBC store staff members, in particular franchisee owners/operators, being highly educated on the craft and specialty beer varieties available at CBC stores.

21.     To achieve this foundation on which every CBC store must be based, CBC imposes strict education requirements on franchisees and their employees.

22.     This includes the requirement that franchisees and their staff secure recognized industry certifications and other milestones within specified timelines.

23.     Such training requirements are over and above CBC's in-house training provided to franchisees, where franchisees learn, among other things, CBC's methods and industry-leading standards pertaining to hospitality/customer service.

24.     Along with maintaining CBC's methods and standards, consistency in brand marketing and the proper use of CBC's trademarks are also critical to maintaining CBC's brand value for all franchisees.

25.     CBC has used its brand name and associated service marks/designs for more than a decade.

26.     CBC has taken steps to protect its branding assets by securing United States Patent and Trademark Office Registration Nos. 6,122,861, 6,198,420, and 6,161,897 (collectively, the "**CBC Trademark Registrations**"). Copies of the CBC Trademark Registrations are attached hereto as Composite Exhibit "**B**".

27.     In 2017, CBC began the process of overhauling its logo and associated marks.

28.     CBC would retain its original name, i.e., CRAFT BEER CELLAR, but update its logo and associated design features, investing heavily in the process and planning a deliberate transition over time to allow all franchisees substantial notice and time to adopt the new logo.

29.     All branding across all franchise stores was to be updated by February 14, 2019, one full year from the date CBC provided to franchisees all the new formal design/branding assets and guidance required to implement the change.

30.     Use of CBC trademarks is mandated to be consistent. Any use of the CBC name, trademarks, logo, and other branding elements in a manner other than in alignment with official branding colors and styles constitutes an unauthorized use.

31.     The same goes for use of any CBC branding elements and trademark components on marketing platforms that are not sanctioned by CBC.

32.     CBC invests heavily in technology and marketing across a variety of platforms, in particular the Internet and on social media.

33.     To ensure consistency for the benefit of all franchisees and for the brand in general, all such marketing and the use of CBC marks and trade dress in a marketing context by any individual franchisee is carefully orchestrated by CBC and subject to CBC's approval.

34.     Accordingly, the use of CBC branding and trademark elements other than as approved by CBC or on CBC-sanctioned marketing platforms constitutes an unauthorized use and violates the FA.

**Franchise Term, Compliance & Termination Governed by FA**

35.     Franchisees are allotted an initial 10-year term during which they are permitted to operate a CBC store location and reap the benefits of CBC's brand value, the methods of operation and related benefits.

36.     In exchange, franchisees must pay CBC royalties and other fees associated with and required to support overall brand marketing, technology/operations and management of the franchise business across the country.

37.     CBC relies on franchisees performing faithfully and complying with the terms of their franchise agreement and Operations Manual for the duration of the term to maintain consistency and value across all locations, and in budget planning.

38.     Early termination of any individual location represents a potential serious disruption to such planning and to overall brand management.

39.     Accordingly, the FA lays out in detail the rights of CBC and the obligations imposed on Defendants in the event that they threaten or actually undertake to unilaterally terminate their franchise prematurely.

40.     The FA also spells out specifically CBC's rights and remedies in the event of non-compliance with FA terms falling short of a premature termination, including distinguishing between curable and non-curable events of default.

**Formation and Operation of the Grand Rapids Shop**

41.     On January 23, 2016, Beaucher and Beeby executed the FA.

42.     On February 11, 2016, Nerdcraft was formed pursuant to Articles of Organization.

43.     Thereafter, Beaucher and Beeby employed Nerdcraft as their agent for purposes of performing under the FA and operating the Grand Rapids Shop.

6

44.     In addition to serving as their agent in performance under the FA, Beaucher, Beeby and Nerdcraft have referenced Nerdcraft as an "owner" of the Grand Rapids Shop.

45.     On <u>January 16, 2018</u>, Nerdcraft secured a Certificate of Assumed Name for the fictitious/trade name "Craft Beer Cellar Grand Rapids".

<u>**Defendants' Chronic Non-Compliance**</u>

46.     Within the first year of its operation, the Grand Rapids Shop was in violation of the FA, notably, for failure to comply with owner/employee education requirements.

47.     In the ensuing years, the Grand Rapids Shop became non-compliant in numerous other areas, including:

  **a.**  As a repeat offender in selling prohibited products ("macro-brewed" beer);

  **b.**  By utilizing prohibited technology and computer systems/software;

  **c.**  By failing to update branding as and when required;

  **d.**  By failing to comply with advertising and marketing protocols, including the use of unauthorized email accounts that constitute unauthorized use of CBC trademarks; and,

  **e.**  By failing to adhere with the terms and conditions of credit and gift card processing programs.

48.     CBC initially gave informal/friendly reminders to correct the non-compliance to no avail.

49.     CBC was then forced to escalate its efforts, multiple times issuing formal default notices to the Grand Rapids Shop demanding that such non-compliant activities cease as provided by the FA.

50.     Despite such efforts, the Grand Rapids Shop remained chronically non-compliant.

**<u>CBC Demands Compliance and Invokes the Right to Terminate</u>**

51.     On <u>December 18, 2019</u>, CBC issued and properly served on Defendants a formal Notice of Default and Right to Terminate pursuant to Section 6.3 of the FA (the "**2019 Notice**"). A copy of the 2019 Notice is attached hereto as Exhibit "**C**".

52.     The 2019 Notice identified seven areas of non-compliance by the Grand Rapids Shop, noting for each whether the default gave rise to an immediate right of termination of the Franchise relationship without any need to afford to Defendants an opportunity to cure.

53.     Despite CBC invoking a right to immediate termination, CBC ***did*** provide Defendants an opportunity to cure the identified non-compliance/defaults and to thereby avoid termination.

54.     On <u>January 7, 2020</u>, Defendants responded to the 2019 Notice largely conceding the facts supporting the defaults alleged but denying it should be held responsible to comply and denying that CBC's right to terminate had been triggered.

55.     On <u>March 20, 2020</u>, CBC invoked contractual pre-suit mediation in an effort to resolve the disputes between the parties.

56.     In the ensuing months, the global COVID-19 pandemic snow-balled and "business as usual" became a thing of the past—prompting CBC and all of its franchise stores to focus on adapting to ever-changing market and regulatory conditions.

57.     Nevertheless, CBC and Defendants scheduled mediation for September 2020.

**<u>Defendants Hack CBC's Website and Launch Unauthorized Competing Webstores</u>**

58.     On <u>August 11, 2020</u>, CBC learned that Defendants hacked CBC website code and implanted a redirect link in the area of the CBC website pertaining to the Grand Rapids Shop.

59.     Invisible on the surface of the website page, the redirect link would activate after 15-25 seconds, such that, any visitor who simply stayed on the Grand Rapids Shop page of CBC's website long enough would automatically be transferred to an entirely separate website.

60.     The website to which this redirect led, https://craftbeercellargr.com (the "**Pirate Site**"), was created and maintained by Defendants.

61.     The Pirate Site was not approved or authorized by CBC, and, as such, its very existence and use by Defendants violates advertising and service mark provisions of the FA.

62.     The Pirate Site also employed various CBC service marks (without authorization), including the mark CRAFT BEER CELLAR and CBC's logo (though the logo uses an incorrect color scheme) and various CBC copyright-protected content.

63.     As such, the Pirate Site constituted an unauthorized use of and infringement on CBC's protected trademarks and other intellectual property and posed a substantial risk of customer confusion.

64.     CBC immediately took action to address the problems implicated by the existence and operation of the Pirate Site, including submitting a formal "takedown" request under the Digital Millennium Copyright Act to the company providing hosting service to the Pirate Site.

65.     Despite efforts to resolve CBC's concerns over the Pirate Site, Defendants escalated the dispute by unilaterally revoking CBC access/credentials to FaceBook® and other social media accounts, all in violation of the FA.

66.     On August 14, 2020, CBC directed to counsel for Defendants a written demand (the "**Trademark Notice**") that the Pirate Site and all links thereto be permanently removed/deactivated and that any unauthorized and infringing use of CBC's name and other trademarks cease. A copy of the Trademark Notice is attached hereto as Exhibit "**D**".

67.     Despite the demands made in the Trademark Notice, and despite offers by CBC proposing a normalization of their relationship through a structured realignment back to compliance, Defendants continued to escalate their unlawful conduct.

68.     Defendants created yet another competing (unapproved) website, https://run.beer (a beer delivery service) (the "**Beer Run Site**"), that continued to utilize CBC's name and service marks without authorization.

69.     This and other non-compliant and destructive conduct increased the intensity of the disputes and further stressed the relationship between the parties.

### Closure of the Grand Rapids Shop and Termination of the Franchise Relationship

70.     On September 3, 2020, Defendants conveyed to CBC that they planned to "shut [the] doors and wind down [their] business", signaling a unilateral and permanent closure of the Grand Rapids Shop in contravention of explicit requirements of the FA.

71.     On September 4, 2020, CBC issued to Defendants a Notice of Default and Termination (the "**Termination Notice**") invoking the right to terminate the franchise relationship immediately without any opportunity to cure or obligation to engage in alternative dispute resolution efforts. A copy of the Termination Notice is attached hereto as Exhibit "**E**".

72.     Despite the franchise relationship being terminated, Defendants continued to operate under CBC branding and trademarks without authorization and in violation of the non-competition restrictions applicable in the termination context.

73.     In addition, Defendants failed to comply with their monetary and other obligations under Section 6.5 of the FA and as otherwise demanded in the Termination Notice.

74.     Despite termination of the franchise relationship and corresponding revocation of any right to use CBC trademarks, as of November 2020, Nerdcraft remained the certificated owner of the "Craft Beer Cellar Grand Rapids" assumed name in Michigan.

75.     In <u>November 2020</u>, Beaucher launched a bar concept believed to violate the substantive terms of the non-competition restrictions set forth in the FA.

76.     Although the FA contains an alternative dispute resolution provision, because (a) the FA and franchise relationship has been terminated; (b) this matter concerns the enforcement of CBC's rights to injunctive relief relating to the unauthorized use of CBC trademarks and violation of the FA's non-compete provisions, and (c) because this matter involves an action to collect monies due under the FA terms, the alternative dispute resolution provision is inapplicable.

77.     Moreover, Defendants voluntarily waived the right to alternative dispute resolution when they proposed and agreed to dispense with previously scheduled mediation.

78.     All conditions precedent to the filing and maintenance of the causes of action asserted herein have occurred, been waived, discharged or otherwise satisfied.

<u>**COUNT I – BREACH OF CONTRACT**</u>
(Beaucher & Beeby)

79.     This is an action for breach of the FA against Beaucher and Beeby arising out of the willful and persistent failure to comply with the express terms of the FA, including, specifically, the post-termination obligations thereof.

80.     CBC re-alleges and incorporates into Count I the allegations set forth in Paragraphs 1 through 78 of this Complaint.

81.     The FA is a valid and enforceable contract supported by lawful consideration.

82.     At all times relevant, CBC fully and properly performed all of its obligations under the FA and stood ready, willing and able to continue so performing.

83.  Beaucher and Beeby materially breached the FA as alleged herein, including by:

   a.  Failing to comply with mandatory training requirements under Section 3.1 of the FA;

   b.  Repeatedly selling prohibited products ("macro-brewed" beer) in violation of Section 5.2(5) of the FA;

   c.  Persistently utilizing prohibited technology and computer systems/software in violation of Section 5.11 of the FA;

   d.  Failing to update branding as and when required in violation of Section 5.5 of the FA;

   e.  Failing to comply with advertising and marketing protocols, including the use of unauthorized email accounts and other unauthorized use of CBC trademarks in violation of Section 2.3 of the FA;

   f.  Failing to adhere with the terms and conditions of credit and gift card processing programs in violation of Section 5.14 of the FA;

   g.  Unilaterally and indefinitely closing the Grand Rapids Shop and otherwise repudiating the obligations of the FA in violation of Sections 6.3(2)(a), 6.3(4) and 6.3(14) of the FA;

   h.  Failing to comply with post-termination obligations, including the failure to pay mandatory post-termination fees, charges and other amounts due as per the formulas set forth in the FA in violation of Section 6.5 of the FA; and

   i.  Violating the non-compete provisions of the FA set forth in 6.5 and 6.8 of the FA.

84.  As a direct and proximate result of Beaucher's and Beeby's material breaches of the FA, CBC has been damaged, including by suffering irreparable harm due to violations of the

non-competition restrictions and the misuse of CBC's branding, trademarks, copyright materials and other intellectual property.

WHEREFORE, CBC hereby demands judgment against Beaucher and Beeby for:

 (a) Permanent injunctive relief enforcing the non-competition obligations of the FA as set forth in Section 6.8 of the FA;

 (b) all actual and consequential damages resulting from their breach of the FA, including the sums due under Section 6.5 of the FA;

 (c) pre- and post-judgment interest;

 (d) an award of the costs and expenses of seeking enforcement of the FA as provided in Section 9.8(6) of the FA; and

 (e) any other relief the Court may deem just and proper.

## COUNT II – TRADEMARK INFRINGEMENT 15 U.S.C. § 1114
(All Defendants)

85. This is an action for trademark infringement against Defendants for their persistent unauthorized use and other misuse of CBC trademarks.

86.  CBC re-alleges and incorporates into Count II the allegations set forth in Paragraphs 1 through 78 of this Complaint.

87. CBC has been operating its franchise locations under the CRAFT BEER CELLAR name and associated logo/marks (the "**CBC Marks**") since 2010, and the CBC name and brand is recognized for its distinctive quality of products, market knowledge and customer service.

88. CBC has taken steps to protect certain of the CBC Marks by securing the CBC Trademark Registrations.

89. By so doing, CBC has the exclusive, nationwide right to use of the CBC Trademark Registrations.

90.     Defendants have engaged in rampant unauthorized use of certain of the CBC Trademark Registrations by way of at least the following conduct:

   **a.**   Publication of the Pirate Site and the Beer Run Site which make unauthorized use of CBC's name and/or incorrect presentations of CBC logos/designs;

   **b.**   Unauthorized use of CBC's name and trademark branding at the Grand Rapids Shop and on social media/Internet platforms ***after*** issuance of the Termination Notice which effectively revoked Defendants' rights to any use of CBC Marks; and

   **c.**   Unapproved application for the Certificated Assumed Name "Craft Beer Cellar Grand Rapids" and continued certificated ownership of such assumed name ***after*** issuance of the Termination Notice.

91.     Such unauthorized use of certain of the CBC Trademark Registrations by Defendants has caused and is likely to continue to cause confusion, deception and/or mistake among purchasers, potential purchasers and the relevant public in the marketplace, the relevant industry, and through all channels of trade as to the source or sponsorship of Defendants' activities, which CBC has not approved and which is out of conformity with the uses authorized by CBC and under the FA.

92.     As a direct and proximate cause of Defendants' misconduct as described herein, CBC has suffered substantial monetary damages yet to be fully ascertained and irreparable harm to CBC's reputation and goodwill as to which there is no adequate remedy at law.

93.     Defendants' misconduct and misuse of the CBC Marks as described herein was deliberate, willful, malicious and done with full knowledge of CBC's intellectual property rights in and to the CBC name, the CBC Marks, and the CBC Trademark Registrations.

94.     Indeed, one of the main values sought by Defendants in acquiring and operating the Grand Rapids Shop as a CBC franchise was the benefit of CBC's brand name/branding and the reputational value associated therewith—Defendants cannot claim they had no knowledge that the CBC Marks were protected when they engaged in the unauthorized uses described herein.

WHEREFORE, CBC hereby demands judgment against Defendants for:

(a) Permanent injunctive relief under 15 U.S.C. § 1116 enjoining the Defendants from any continued unauthorized use of any of the CBC Marks and the CBC Trademark Registrations, including ownership of the certificated assumed name "Craft Beer Cellar Grand Rapids";

(b) actual damages caused by Defendants' misconduct, statutory treble damages, and any other damages authorized under 15 U.S.C. § 1117;

(c) pre- and post-judgment interest;

(d) an award of the costs and expenses of seeking enforcement of CBC's trademark rights, including attorneys' fees under 15 U.S.C. § 1117; and

(e) any other relief the Court may deem just and proper.

Dated:  December 14, 2020

/s/ Trent Cotney
Trent Cotney, BBO # 704765
**COTNEY CONSTRUCTION LAW, LLP**
3110 Cherry Palm Drive, Suite 290
Tampa, Florida 33619
Tel: 813-579-3278 Fax: 813-902-7612
tcotney@cotneycl.com
gpinilla@cotneycl.com
abukowski@cotneycl.com
*Attorneys for Plaintiff*